JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
MELANIE L. PROCTOR (CSBN 228971)
Melanie.Proctor@usdoj.gov
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6730
    FAX: (415) 436-7169

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| QIANG LU, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL CHERTOFF, Secretary, Department of Homeland Security; EMILIO T. GONZALEZ, Director of United States Citizenship and Immigration Services; ROBERT S. MUELLER, Director of the Federal Bureau of Investigation; MICHAEL B. MUKASEY,* Attorney General of the United States; CHRISTINA POULOS, Director, California Service Center, U.S. Citizenship and Immigration Services; GERARD HEINAUER, Director, Nebraska Service Center, U.S. Citizenship and Immigration Services, <br><br> Defendants. | No. C 07-4221 SBA <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT <br><br> Date: March 11, 2008 <br> Time: 1:00 p.m. <br> Courtroom: 3, 3rd Floor |

## I. INTRODUCTION

Plaintiff Qiang Lu ("Plaintiff") asks this Court to issue a writ of mandamus, compelling Defendants reach a decision on his application for adjustment of status. He also asks the Court to find that Defendants have violated the Administrative Procedure Act ("APA"), and to grant relief under the Declaratory Judgment Act. Plaintiff's claims must fail. Plaintiff's application remains pending because his name check is not yet complete. The facts are undisputed, and Defendants are

1  entitled to judgment as a matter of law.  Accordingly, Defendants respectfully ask this Court to deny
2  Plaintiff's motion, and grant their motion for summary judgment.

## II.   BACKGROUND

On August 27, 2004, Plaintiff filed an I-485 application for adjustment of status.  See Declaration of Neil M. Jacobson, p. 2 ¶ 3 (attached as Exh. A).  Plaintiff's wife filed a concurrent application for derivative adjustment.  Id.  Plaintiff's application is based on his employment.  Complaint, p. 2 ¶ 2.  Both Plaintiff's and his wife's name checks were submitted to the Federal Bureau of Investigation ("FBI") on September 9, 2004.  Exh. A, p. 4 ¶ 8.  Plaintiff's application is ready to be adjudicated except for his pending background and security check Id., p. 4 ¶ 8.  His wife's application is dependent upon his, and thus cannot be adjudicated until Plaintiff's application is resolved.  Id., p. 4 ¶ 8.

## III.   LEGAL BACKGROUND

A.   ADJUSTMENT OF STATUS

Section 245 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255, authorizes the Secretary of the Department of Homeland Security ("Secretary")[1] to adjust to permanent residence status certain aliens who have been admitted into the United States.  Adjustment of status is committed to the Secretary's discretion as a matter of law.  Section 1255(a) expressly provides:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the [Secretary], in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence[.]

8 U.S.C. 1255(a) (emphasis added).  An applicant for adjustment of status must meet three requirements: he must apply for such status, be eligible to receive an immigrant visa, and the visa must be immediately available to him at the time he applies.  Id.  Significantly, the statute does not set forth any time frame in which a determination must be made on an application to adjust status.

---

[1] On March 1, 2003, the Department of Homeland Security and its United States Citizenship and Immigration Services assumed responsibility for the adjustment program.  6 U.S.C. § 271(b).  The discretion formerly vested in the Attorney General is now vested in the Secretary of the Department of Homeland Security.  6 U.S.C. § 551(d).

DEFENDANTS' MOTION AND OPPOSITION
No. C 07-4221 SBA                                      2

In addition, the regulations setting forth the procedures for aliens to apply to adjust status do not set forth a time frame for adjudication, and allow discretion in how to conduct the adjudication. See 8 C.F.R. § 245 et seq.

Before a decision is rendered on an alien's application to adjust status, U.S. Citizenship and Immigration Services ("USCIS") conducts several forms of security and background checks to ensure that the alien is eligible for the benefit sought and that he is not a risk to national security or public safety. See Exh. A, pp. 2-3 ¶ 4; Fact Sheet: Immigration Security Checks – How and Why the Process Works (April 25, 2006) (attached as Exh. B). USCIS also conducts investigations into the bona fides of petitions and applications that have been filed, in order to maintain the integrity of the application process and to ensure that there is no fraud in the application process. See 8 U.S.C. § 1105(a) (authorizing "direct and continuous liaison with the Directors of the [FBI] and the Central Intelligence Agency and with other internal security officers of the Government for the purpose of obtaining and exchanging information for use in enforcing the provisions of this chapter in the interest of the internal and border security of the United States"). These checks currently include extensive checks of various law enforcement databases, including the FBI. See Exh. A, pp. 2-3 ¶ 4.

The FBI's name check process is quite complex. See Eldeeb v. Chertoff, et al., No. 07-cv-236-T, 2007 WL 2209231, at *4 (M.D. Fla. July 30, 2007). Name checks are performed at the request of a variety of organizations, including the federal judiciary, friendly foreign police and intelligence agencies, and state and local governments. Id., at *3. When the FBI conducts a name check, the name is checked against the FBI's Universal Index, in a four-stage process. Id. at *3. At each stage of the process, the FBI employs a first-in, first-served protocol. Id. However, when an applicant's name check requires a review of numerous FBI records and files, the name check may require additional time until all responsive records are located and reviewed. Id. USCIS determines which name checks are to be expedited. See USCIS Clarifies Criteria to Expedite FBI Name Check (Feb. 20, 2007) (attached as Exh. C). An expedited name check proceeds to the front of the queue, in front of others awaiting processing. Eldeeb, 2007 WL 2209231, at *5.

The FBI processed more than 3.4 million name checks during fiscal year 2006. Id. at *3. The FBI is working as expeditiously as possible to reduce the small percentage of immigration name

**1** checks for which a backlog exists. This backlog results from the vast number of requests the FBI

**2** receives from USCIS and other customers, as well as the requirement for enhanced security

**3** measures existing since September 11, 2001. Id. at *5. A variety of factors play into processing

**4** times, including "hits," common names, and expedited name checks. Id. at *4.

**5**   C.   RELIEF AVAILABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT
           AND THE MANDAMUS ACT
**6**

**7** Judicial review under the APA, 5 U.S.C. § 701, et seq., is specifically precluded where

**8** "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Agency action,

**9** as defined under the APA, also includes "a failure to act." 5 U.S.C. § 551(13). Under 5 U.S.C.

**10** § 706(1), a court may compel "agency action unlawfully withheld or unreasonably delayed." The

**11** elements of a claim under § 706(1) are the existence of a discrete, ministerial duty; a delay in

**12** carrying out that duty; and a determination that the delay was unlawful or unreasonable in light of

**13** prejudice to one of the parties. Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004);

**14** Rockbridge v. Lincoln, 449 F.2d 567, 569-73 (9th Cir. 1971).

**15** The APA does not provide an independent jurisdictional basis. Califano v. Sanders, 430

**16** U.S. 99, 107 (1977); Staacke v. U.S. Department of Labor, 841 F.2d 278, 282 (9th Cir. 1988).

**17** Rather, it merely provides the standards for reviewing agency action once jurisdiction is otherwise

**18** established. Staacke, 841 F.2d at 282. Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201

**19** ("DJA"), does not provide an independent basis for jurisdiction; rather, it only expands the range

**20** of remedies available in federal courts. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-

**21** 72 (1950).

**22** Mandamus is an extraordinary remedy. See Cheney v. United States District Court for

**23** the District of Columbia, 542 U.S. 367, 392 (2004) (Stevens, J., concurring); Allied Chemical

**24** Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980). The United States Supreme Court has stated that

**25** "[t]he common law writ of mandamus is intended to provide a remedy for a plaintiff only if . . . the

**26** defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616 (1984);

**27** see also Kildare v. Saenz, 325 F.3d 1078, 1084 (9th Cir. 2003).

**28** ///

## IV. ANALYSIS

### A. DEFENDANTS MUKASEY AND MUELLER SHOULD BE DISMISSED

Courts in this district have recognized that since March 1, 2003, the Department of Homeland Security has been the agency responsible for implementing the Immigration and Nationality Act. See 6 U.S.C. §§ 271(b)(5), 557; Konchitsky v. Chertoff, No. C-07-00294 RMW, 2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007); Dmitriev v. Chertoff, No. C 06-7677 JW, 2007 WL 1319533, at *4 (N.D. Cal. May 4, 2007). Accordingly, Defendants Mukasey and Mueller should be dismissed.

### B. THE COURT LACKS JURISDICTION TO COMPEL PROCESSING WITHIN A CERTAIN TIME FRAME

Defendants respectfully contend that the Court lacks jurisdiction to compel processing of Plaintiff's application with a certain time frame.[2] District courts that have concluded that the Mandamus Act vests the courts with subject matter jurisdiction have too firmly rested their analysis upon an inapplicable provision in 8 C.F.R. § 245.2(a)(5)(i). See, e.g., Yu v. Chertoff, No. C06-7878 CW, 2007 WL 1742850, at *2 (N.D. Cal. June 14, 2007) (finding that 8 C.F.R. § 245.2(a)(5) requires a decision); Quan v. Chertoff, No. C06-7881 SC, 2007 WL 1655601, at *3 (N.D. Cal. June 7, 2007) (same); Fu v. Gonzales, No. C07-0207 EDL, 2007 WL 1742376, at *3 n.2 (N.D. Cal. May 22, 2007) (same). The non-discretionary nature of § 245.2's notice requirement does not extend to the pre-adjudication processing of which Plaintiff here complains, a process that is statutorily defined as discretionary. 8 U.S.C. § 1252(a)(2)(B). The pre-adjudication investigation and processing are also discretionary beyond the language of the controlling statute.

The background investigation is discretionary as a matter of common sense. Yan v. Mueller, No. H-07-0313, 2007 WL 1521732, at *6 (S.D. Tex. May 24, 2007). Furthermore, the agencies must be able to make determinations in how to proceed with an investigation on a case-by-case basis, once enlightened by the information received at points along the investigative process. See e.g., 8 C.F.R.§ 245.6 (an "interview may be waived . . . when it is determined by the Service that

---

[2] Defendants acknowledge the Court's recent decision in Dong v. Chertoff, 513 F. Supp. 2d 1158 (N.D. Cal. 2007) (finding jurisdiction).

DEFENDANTS' MOTION AND OPPOSITION
No. C 07-4221 SBA                                         5

1  an interview is unnecessary"); id. at § 103.2(b)(7) ("[The Service] may direct any necessary
2  investigation") (emphasis added); id. at § 103.2(b)(18) ("A district director may authorize
3  withholding adjudication"). The use of "may," in regulations that are more specifically addressed
4  to the processing of adjustment applications than § 245.2's provision for final adjudication and the
5  notice of such final agency determination, provides discretion to the manner of the processing of
6  applications beyond that expressed in 8 U.S.C. § 1252(a)(2)(B). Thus, the process of adjudication
7  is completely discretionary. See Spencer Enterprises, Inc. v. United States, 345 F.3d 683, 690 (9th
8  Cir. 2003). Accordingly, the Court lacks jurisdiction to compel USCIS to render a decision on
9  Plaintiff's application within a certain timeframe.

10  Furthermore, mandamus is reserved for those situations in which the plaintiff's claim is clear
11  and certain. Kildare, 325 F.3d at 1078. Here, as explained below, because Plaintiff has failed to
12  establish that action on his application has been unreasonably delayed, he has failed to show that his
13  claim is so clear and certain that mandamus is justified. USCIS has exercised its discretion in
14  determining which name checks should be expedited. See Exh. C. Plaintiff's case meets none of
15  these criteria.

16      C.    PLAINTIFF CANNOT ASSERT A CLAIM ON BEHALF OF HIS WIFE, NOR IS
            HER CLAIM RIPE FOR ADJUDICATION
17

18  Contrary to Plaintiff's argument,, as a pro se plaintiff, he may not assert a claim on his wife's
19  behalf. C.E. Pope Equity Trust v. United States, 818 F.2d 696, 697 (9th Cir. 1987) ("Although a
20  non-attorney may appear in propria persona in his own behalf, that privilege is personal to him. He
21  has no authority to appear as an attorney for others than himself." (citations omitted)). Moreover,
22  her claim is not ripe. Not only is her name check incomplete, but because her application is
23  dependent upon his, it cannot be adjudicated. Exh. A, p. 4 ¶ 8. Thus, his wife's right to immediate
24  adjudication is not "clear or certain." Moreover, because her application cannot be adjudicated until
25  Plaintiff's application is decided, the delay in her case is eminently reasonable. See, e.g., Sun v.
26  Chertoff, No. 07cv152 BTM, 2007 WL 2480315, at *2 (S.D. Cal. Aug. 27, 2007) (dismissing
27  beneficiary's claim); Kheiravar v. Chertoff, No. 07cv0143 JM, 2007 U.S. Dist. LEXIS 35390, at *5
28  (S.D. Cal. May 14, 2007) (dismissing beneficiary's claim for lack of subject matter jurisdiction).

DEFENDANTS' MOTION AND OPPOSITION
No. C 07-4221 SBA                6

1  Accordingly, the claims on behalf of Plaintiff's wife should be dismissed.

2      D.    PLAINTIFF CANNOT ESTABLISH THE EXISTENCE OF AN UNREASONABLE DELAY

A review of the six factors set forth by <u>Telecomm. Research and Action Ctr. v. FCC</u>, 750 F.2d 70, 80 (D.C. Cir. 1984), reveals that Plaintiff has failed to establish the existence of an unreasonable delay. Here, Defendants have offered a specific explanation for the delay: Plaintiff's name check involves a complex research process that is ongoing. Exh. A, p. 4 ¶ 8; <u>contra</u> <u>Tang v. Chertoff</u>, No. 07-0683 JF, 2007 WL 1650945, at *2 (N.D. Cal. June 5, 2007) (finding that on a record which lacked "a particular explanation as to the cause of the delay," two years was unreasonable under the APA). Accordingly, his request for relief should be denied.

        1.    <u>Defendants' Process Is Governed By A Rule of Reason</u>

Defendants' process for evaluating I-485 applications is governed by a rule of reason because USCIS does everything it can to ensure that no eligible alien waits longer than reasonably necessary to receive a decision. Exh. A, p. 7 ¶ 14; <u>see</u> <u>Mahdavi v. Chertoff</u>, No. 06cv2716 DMS, 2007 WL 474556, at *2 (S.D. Cal. Oct. 29, 2007) (finding that the rule of reason is "the uncertain duration of the integral background checks."). Plaintiff posits that because his case has not yet been adjudicated, the delay is unreasonable. Complaint, p. 4. However, as set forth in the Jacobson Declaration, the USCIS is monitoring this case on a weekly basis to identify it quickly when a response from the Federal Bureau of Investigation ("FBI") has been received. <u>See</u> Exh. A, p. 7, ¶ 14. Moreover, USCIS has ensured that the background checks over which it has control are kept up-to-date. <u>Id.</u>, p. 3 ¶ 6.

        2.    <u>There is No Congressionally Mandated Timetable</u>

Defendants acknowledge that 8 U.S.C. § 1571 expresses a "sense of Congress" that applications for immigration benefits should be processed within a certain time frame; however, the language is precatory and thus the statute is not a mandate. <u>See</u> <u>Wright v. City of Roanoke Redevelopment and Housing</u>, 479 U.S. 418, 432 (1987) (statute phrased in precatory terms does not create a substantive right); <u>Orkin v. Taylor</u>, 487 F.3d 734, 739 (9th Cir. 2007) ("'Sense of Congress' provisions are precatory provisions, which do not in themselves create individual rights, or, for that

matter, any enforceable law."). Furthermore, the statute was enacted in 2000, prior to the events of September 11, 2001. See Immigration Services and Infrastructure Improvements Act of 2000, Pub. L. No. 106-313, 114 Stat. 1251 (enacted Oct. 17, 2000). Accordingly, it no longer provides a meaningful standard against which the Court can measure the delay at issue in this case. Because there is no meaningful time frame against which the Court can measure the adjudication of Plaintiff's application, there is no timetable here. Mahdavi, 2007 WL 4747556, at *3.

### 3. Plaintiff Has Failed To Establish That The Delays Impact His Health or Welfare

Here, as in Mahdavi, Plaintiff has not presented any evidence that delays in processing negatively impact his health. Mahdavi, 2007 WL 4747556, at *3. In addition, he has not stated that he is unable to pay the fees for appropriate work and travel permits, or that the fees will render him destitute. Complaint, p. 5 ¶ 22; Mahdavi, 2007 WL 4747556, at *3 ("The context for this factor is grounding in Blankenship v. Sec'y of HEW, 586 F.2d 329, 334 (6th Cir. 1978)[,]" where the individuals seeking relief were destitute and seeking benefits for the necessities of human life). He also claims his wife's education plans have been delayed; however, as explained above, he cannot assert claims on her behalf. As such, Plaintiff has failed to establish that the delay in adjudicating his adjustment application has impaired his health and human welfare. Mahdavi, 2007 WL 4747556, at *3.

### 4. Expediting Plaintiff's Name Check Would Have a Negative Effect on Agency Activities

The Court should decline to interfere with discretion of the FBI to set priorities for processing background checks. See, e.g., Konchitsky, 2007 WL 2070325, at *6-7 (stating "courts squarely addressing the issue of whether they have jurisdiction to compel the FBI to perform name checks . . . have overwhelmingly concluded that they do not."); Yan, 2007 WL 1521732, at *6 ("The evidence shows that the delay is due, not only to the volume of requests that the FBI receives, but also to the FBI's exercise of discretion in determining the timing for conducting the many name check requests that it receives and the manner in which to conduct those checks." (emphasis added)). Furthermore, as recognized by the district court in Eldeeb, the fact the majority of cases are

1  processed within a lesser time frame "suggests that . . . the requests without results after six months are so because those particular Name Check requests require more time to investigate." Eldeeb, 2007 WL 2209231, at *5.

Here, Defendants submitted Plaintiff's name check within two weeks of receiving his application, and have made every effort to keep his other security checks up to date so the application can be adjudicated as soon as the name check is received. Exh. A, p. 3, 4 ¶¶ 6, 8 Thus, contrary to Plaintiff's contentions, Defendants are acting diligently in their efforts to complete adjudication in a timely manner. See Mahdavi, 2007 WL 474556, at *3 (finding that "Defendants are processing outstanding background checks as quickly as possible"). Accordingly, this factor weighs against granting the relief Plaintiff seeks. Mahdavi, 2007 WL 4747556, at *3 (finding that expediting the plaintiff's name check would result in no net gain, and applications of a higher or competing priority would be delayed).

### 5. Plaintiff Has Not Been Prejudiced By The Delay

As in Mahdavi, Plaintiff has offered little in the way of an explanation of how he is prejudiced by the delay in his case. He states only that he must pay additional filing fees in order to work and travel legally, and that he is unable to accrue time to apply for citizenship. See Complaint, p. 5 ¶¶ 22-24. Plaintiff has not articulated a reason why this interest should outweigh the Government's interest in a thorough and accurate background check. See Mahdavi, 2007 WL 4747556, at *3. In addition, Plaintiff is free to explore alternative employment. See American Competitiveness in the Twenty-First Century Act of 2000, Pub. L. No. 106-313, 114 Stat. 1251 (permitting the alien work to adjust status based on employment other than with the company that filed the I-140 visa petition). Accordingly, Plaintiff has failed to establish that adjudication in his case has been unreasonably delayed.

### 6. Plaintiff Has Failed to Establish the Existence of Agency Impropriety

Plaintiff has offered no evidence of impropriety on the part of the agency. Here, as in Mahdavi, "the only impediment to adjudication of Plaintiff's application is the pending background check." Mahdavi, 2007 WL 4747556, at *4; Exh. A, p. 4 ¶ 8. Furthermore, Defendants will continue to update any necessary background and security checks to ensure that his case is completed as

quickly as possible upon receipt of the name check. Exh. A, p. 3 ¶ 6. Plaintiff has failed to establish that adjudication in his case has been unreasonably delayed. See Mahdavi, 2007 WL 4747556, at *4 (finding that after consideration of the six factors articulated in TRAC, 750 F.2d at 80, the plaintiff had failed to establish that adjudication was unreasonably delayed, and thus granting the Government's motion for summary judgment).

Plaintiff rests his arguments on a single fact: the passage of time. However, "[t]he passage of time alone is rarely enough to justify a court's intervention in the administrative process, especially since administrative efficiency is not a subject particularly suited to judicial intervention." Singh v. Ilchert, 784 F. Supp. 759, 765 (N.D. Cal. 1992); see also Eldeeb, 2007 WL 2209231, at *18 (finding that while the plaintiff had the right to have his application adjudicated, he "does not have a right to action on his application at a certain pace."). Plaintiff has failed to establish any facts that show the delay is unreasonable. Further, Defendants have established good cause for the delay in processing Plaintiff's application.

C.  PLAINTIFF'S CLAIM IS NOT CLEAR AND CERTAIN

Mandamus is reserved for those situations in which the plaintiff's claim is clear and certain. Kildare, 325 F.3d at 1078. Here, because Plaintiff has failed to establish that action on his application has been unreasonably delayed, he has failed to show that his claim is so clear and certain that mandamus is justified. Accordingly, Plaintiff's request for relief should be denied.

**IV.  CONCLUSION**

For the foregoing reasons, the Government respectfully asks the Court to deny Plaintiff's motion for summary judgment, dismiss Defendants Mukasey and Mueller, dismiss the claims on behalf of Plaintiff's wife, and grant summary judgment in favor of the remaining Defendants.

Dated: February 5, 2008

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

_____/S/_____
MELANIE L. PROCTOR
Assistant United States Attorney
Attorney for Defendants